HENKEL CORP., successor-in-interest
to United Resin Products, Inc.,
Plaintiff,

v.

POLYGLASS USA, INC., Defendant.

No. 96 CV 5710.

United States District Court,
E.D. New York.

June 26, 2000.

Miles A. Jellinek, Cozen and O'Connor, Philadelphia, PA, for plaintiff.

Thomas M. Beneventano, Lasorsa Beneventano & Alfano, New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Henkel Corp. ("Henkel") brings this diversity action against defendant Polyglass USA, Inc. ("Polyglass") to recover for property damage to plaintiff's warehouse building caused by a fire. Plaintiff alleges defendant is responsible for the fire damage because of defendant's torch-applied roofing material, which plaintiff alleges was manufactured and supplied in an inherently dangerous manner. Defendant moves to preclude plaintiff from providing any evidence at trial regarding the cause and origin of the subject fire because of plaintiff's alleged spoliation of the evidence, and for summary judgment under Federal Rule of Civil Procedure 56.

I

The record, in substance, shows the following.

On March 26, 1999, Liladhar Ramcharan, an employee of plaintiff was making repairs to a leak in the roof of plaintiff's warehouse located at 126 Sutton Street. To patch the leak, Ramcharan applied a roofing polyester membrane material sold under the brand name "Polybond," manufactured by defendant Polyglass.

The Polybond material was packaged in rolls and stored on pallets with other rolls of Polybond. Ramcharan laid out approximately five rolls of the Polybond material over certain areas of the roof and had to use a

propane torch to melt the material so it would stick in place. Ramcharan stated in his deposition that he worked on the roof from approximately 1:00 p.m. until 4:00 p.m., when he says he turned the torch off. Because the roof was made of wood and using the torch created a fire risk, Ramcharan claims that he returned to the roof at 4:30 p.m., 6:30 p.m., and 7:00 p.m. to check for any small or hidden fires and found none.

During the evening of the day that Ramcharan worked on the roof, a fire began. According to the Fire and Incident Report, written by the New York City Bureau of Fire Investigation ("Fire Report"), a "fire originated on the roof of the building on the East Side ... in combustible material (roofing material)." The "[f]ire caused the collapse of [the] roof," resulting in substantial damage to the building and its contents. The Fire Report states the "Cause of Fire" as "Probably Heat From Open Flame" and lists the "Incident Time" as 8:55 p.m. The report also explains that an "[e]xamination [of the premises was] precluded due to collapse of roof into building."

On March 28, 1996, two days after the fire, William F. Nolan, a fire analysis expert hired by plaintiff, inspected the scene of the fire in order to determine its origin and cause. Nolan inspected the fire scene, including an examination of what remained of the roof, and interviewed several employees, including Ramcharan, whereupon he learned of Ramcharan's application of the Polybond material. Nolan found an unused pallet of Polybond and removed a "hunk" of the material from the roll "with the name [P]olybond on it." Nolan also took 121 photographs of the fire scene, one of which depicts the pallet of unused Polybond rolls. That picture shows, among other things, the words "Polybond" and "Polyglass" printed on the unused rolls in large block letters.

Based on his inspection and interviews, Nolan concluded that "Ramcharan ... ignited combustible materials within the roof" while he was applying the Polybond material with the torch. In particular, Nolan determined from "observable burn patterns" and the conditions surrounding the fire that it began in the roof area around a "wooden skylight" and spread to the portion of the roof over a laboratory, causing both areas of the roof to collapse.

Plaintiff also hired the Held Development Corp. ("Held") to inspect the building and to perform any necessary shoring or demolition work. On April 1, 1996, Held informed plaintiff that portions of the remaining walls were in an "imminently hazardous condition" and that immediate work was necessary. According to plaintiff, Held could not perform the shoring work unless it "remove[d] the fire debris." Held began the work on April 15, 1996, nearly three weeks after the fire, and completed the project on May 8, 1996.

Aside from Nolan's sample of unused Polybond material, the propane torch used by Ramcharan to apply the Polybond was the only other item preserved from the fire scene.

Defendant Polyglass first learned of the fire when it received service of the summons and complaint in this lawsuit on or about December 3, 1996. Defendant hired John Campbell, a fire analysis expert, to evaluate the available evidence, including the deposition transcripts, photographs, the Fire Report, and discovery responses, in order to make its own determination of the origin and cause of the fire.

Campbell states in a sworn affidavit that Nolan's conclusions about the origin and cause of the fire were inconsistent with the evidence. In particular, Campbell cites the time lapse of four hours and fifty-five minutes between the last torch use and the detection of the fire, the unlikelihood of the fire starting in the roof area around the wooden skylight, and the observations of the Fire Department at the fire scene.

Moreover, Campbell notes that by clearing the fire debris, Polyglass has been precluded "from having an opportunity to perform a similar investigation of the fire scene." The photographs and field notes of Nolan, according to Campbell, "do not contain sufficient detail to provide reasonable assistance in determining the cause and origin of the fire," and plaintiff did not preserve any alternate sources of heat or fire or any of the actual materials showing the burn patterns alleged-

ly observed by Nolan. Because of these circumstances, Campbell states that "it is impossible for me or any other qualified expert to reach any conclusions as to the cause and origin of the subject fire."

## II

Defendant Polyglass argues that plaintiff's spoliation of the evidence warrants the sanction of precluding plaintiff from offering any evidence as to the cause and origin of the fire. If granted, this sanction would result in summary judgment for defendant because plaintiff would then be unable to make out its prima facie case.

Plaintiff counters that there has been no spoliation of evidence, that it did not know the identity of Polybond's manufacturer until May 23, 1996, nearly two months after the fire, and that defendant has not suffered any prejudice in its ability to establish its defense.

■ To determine whether this Court should exercise its inherent authority to impose sanctions for spoliation of evidence, "a threshold question is whether a party had any obligation to preserve the evidence." *See Shaffer v. RWP Group, Inc.,* 169 F.R.D. 19, 24 (E.D.N.Y.1996) (quoting *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68 (S.D.N.Y.1991)). If a party did have an obligation to preserve evidence, the degree of that party's culpability and the amount of prejudice caused by its actions will determine the severity of the sanction to be imposed. *See id.* at 25.

■ A party's obligation to preserve evidence arises when it has notice of the evidence's relevance to litigation already commenced or "likely to be commenced." *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 73 (S.D.N.Y.1991). At the latest, Henkel's duty to preserve the evidence attached on March 28, 1996, when Nolan asked Henkel to provide him with the purchase invoice of the Polybond material to help identify the manufacturer. By that date, plaintiff had concluded that the Polybond material was involved in causing the fire and clearly knew that it was likely to commence litigation against Polybond's manufacturer.

■ Plaintiff responds by saying that there was no spoliation of the relevant evidence because it preserved a piece of the unused Polybond material from the fire scene. This argument is ludicrous. First, plaintiff's "preservation" of the evidence was no more a preservation than if it had trekked to the local hardware store and bought a new, unused roll of Polybond. Second, plaintiff makes the unjustified assumptions that the Polybond material was necessarily involved in causing the fire and that it must have been a substantial factor. But given the nearly five hour time lapse between when Ramcharan says he last used the torch and the time of the fire incident as reported by the Fire Department, there is reason to believe that the fire may not have been set off during Ramcharan's application of Polybond. Therefore the relevant evidence in this case consists not only of the Polybond material, but also includes the actual fire debris with the observable burn patterns and the alternate sources of heat or fire in the burned areas of the building, such as "fluorescent lights, electrical conduits, and heating apparatuses." None of these materials were preserved because plaintiff removed and discarded them all.

Furthermore, though plaintiff claims that it did not know the identity of Polybond's manufacturer until May 23, 1996, and therefore could not notify Polyglass about the fire scene and the imminent removal of the evidence, Nolan's photograph of the Polybond rolls at the fire scene clearly shows the words "Polybond" and "Polyglass" printed on the rolls. This Court finds it incredible that Nolan, plaintiff's hired fire analysis expert, could not have taken the few extra seconds— after removing a piece of Polybond material from one of the unused rolls—to take note of the manufacturer's name printed clearly on the rolls in large block letters. Granting plaintiff even all the benefit of the doubt, there is no excuse for its failure to identify Polyglass as the manufacturer and its preclusion of Polyglass from inspecting the fire scene before the debris removal.

Though plaintiff's actions suggest that it acted in bad faith, the evidence is not conclusive. Nevertheless, plaintiff's failure properly to notify Polyglass is troubling, and this Court finds plaintiff highly culpable for the destruction of the relevant evidence. *See Shaffer,* 169 F.R.D. at 26 (finding party "highly culpable" for its "conscious and reckless disregard for [its] discovery obligations").

Moreover, Polyglass's inability to inspect the fire scene or any actual fire debris is highly prejudicial to its defense. Defendant's fire expert, Campbell, states that Nolan's conclusions about the origin and cause of the fire were inconsistent with the evidence that nearly five hours passed between the time that Ramcharan says he last used the torch and the time of the fire incident, and also "inconsistent with a fire starting in a wood structure around a skylight." Campbell also states that the "massive loss of evidence [makes it] impossible to ever ascertain with any certainty and accuracy the cause and origin of the subject fire."

Because plaintiff has had the opportunity to have its fire expert inspect the fire scene and defendant has not been afforded the opportunity either to inspect the scene or any actual fire debris, the evidentiary playing field between the two parties is clearly not level. Because plaintiff is responsible for this evidentiary disparity, some form of sanction is appropriate.

But the sanction that defendant seeks— "precluding plaintiff from introducing evidence . . . with regard to the cause and origin of the subject fire"—is overly punitive. Imposing this sanction would have the effect of granting defendant summary judgment, and such a result is not justified by the facts of this case. *See Baliotis v. McNeil,* 870 F.Supp. 1285, 1289 (M.D.Pa.1994) ("A sanction that has the 'drastic' result of judgment being entered against the party who has lost or destroyed evidence . . . must be regarded as a 'last resort' . . . ." (internal citations omitted)). Though the lost evidence might have supported defendant's theory that the Polybond material was not involved in causing the fire—and some of the extrinsic evidence supports this theory—there is no conclusive proof that this would have been the case.

The more appropriate remedy is an adverse inference charge instructing the jury that it may infer from plaintiff's removal of the fire debris that the evidence from the fire scene would have been unfavorable to the plaintiff. This remedy will satisfy both the punitive and remedial purposes of adverse inference sanctions by punishing plaintiff for its culpable destruction of the evidence and by restoring the "prejudiced party to the same position . . . that it would have held if there had been no spoliation." *Turner,* 142 F.R.D. at 74; *see also Shaffer,* 169 F.R.D. at 28 (imposing adverse inference charge sanction for party's reckless destruction of evidence); *Baliotis,* 870 F.Supp. at 1292–93 (imposing adverse inference charge sanction for party's destruction of fire scene evidence). Plaintiff will "remain free at trial to proffer an explanation" for why it removed the fire debris and why it failed to notify defendant of the removal. *Shaffer,* 169 F.R.D. at 28.

### III

To the extent defendant Polyglass moves for summary judgment the motion will be denied. The Court concludes that an "adverse inference charge" sanction will be appropriate to remedy plaintiff Henkel's spoliation of the evidence.

So ordered.