MOUNT OLIVET TABERNACLE CHURCH, Appellee

v.

EDWIN L. WIEGAND DIVISION, Emerson Electric Company, Appellants.

Superior Court of Pennsylvania.

Argued Feb. 27, 2001.

Filed Aug. 13, 2001.

Reargument Denied Oct. 19, 2001.

William H. Lamb, West Chester, for appellants.

Richard W. Yost, Philadelphia, for appellee.

Before DEL SOLE, President Judge, EAKIN and LALLY–GREEN, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, the Emerson Electric Company, Wiegand Division,[1] appeals from the judgment entered October 18, 1999, in favor of Plaintiff/Appellee, Mount Olivet Tabernacle Church (the Church). We affirm.

¶ 2 The factual background of the case is as follows. Appellant manufactured and distributed a Chromalox Model TLC–210 Immersion Heater, which the Church used to heat water in a large baptismal pool. On November 26, 1994, a fire erupted in the Church building, causing extensive damage in the stipulated amount of $981,000.00. On November 22, 1996, the Church filed a complaint against Appel-

lant, alleging that the heater was defective and that the heater caused the fire.

¶ 3 Specifically, the Church alleged the following. A church employee filled the baptismal font and turned on the heater. The water drained from the pool, but the heater did not shut off. The heater reached extremely high temperatures and burned the bottom of the empty baptistry; the fire then spread to other parts of the building. The Church further alleged that the heater was defectively designed because it lacked safety warnings and safety devices such as a thermocouple and a low-water shutoff.

¶ 4 The case proceeded to trial from May 10—May 14, 1999. The jury found that the heater was defective and that the heater was the proximate cause of the damage. The jury awarded $981,000.00 to the Church. Appellant's post-trial motions were filed on May 24, 1999, and denied on September 21, 1999. On October 18, 1999, judgment was entered on the verdict.[2] This appeal followed.[3]

¶ 5 Appellant raises three issues on appeal:

1. Whether the lower court committed reversible error warranting a new trial when it failed to properly instruct the jury, in accordance with controlling Pennsylvania precedent, that the product manufactured by Emerson was defective if—and only if—the product, at the time it left

1. The parties and the court occasionally refer to Wiegand and Emerson as separate entities. For consistency and convenience, however, we will refer to Wiegand and Emerson singularly as "Appellant."

2. After delay damages were added, the final verdict amount was $1,093,122.76.

3. Appellant filed its notice of appeal on October 14, 1999. Judgment was not entered on

the verdict until October 18, 1999. Appellant's notice of appeal was premature because an appeal properly lies from the entry of judgment, not from the denial of post-trial motions. *Fetherolf v. Torosian*, 759 A.2d 391, 392 n. 1 (Pa.Super.2000), *citing, Johnston the Florist, Inc. v. TEDCO Construction Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 514 (1995). Nevertheless, we will entertain the appeal because judgment has been entered on the verdict. *Id.*

Emerson's control, was unsafe for its "intended use," rather than "unsafe for use" as the lower court erroneously instructed.

2. Whether the lower court committed reversible error and/or abused its discretion warranting JNOV or a new trial, when it failed to dismiss Plaintiff's claims, failed to grant Emerson's request for a spoliation inference jury instruction and/or failed to impose any sanction upon Plaintiff as a consequence of Plaintiff's intentional destruction of critical fire scene evidence, where that destruction prevented Emerson from identifying other potential causes of the fire and as a result, substantially prejudiced Emerson's ability to prepare a defense.

3. Whether the lower court abused its discretion or erred in permitting Plaintiff to introduce at trial highly prejudicial and inflammatory evidence of alleged other fires involving similar heaters thus suggesting to the jury that the subject product had been previously adjudicated a fire hazard, where the lower court ultimately ruled that the incidents were not similar at all.

Appellant's brief at 4.

¶ 6 First, Appellant argues that the trial court committed reversible error by instructing the jury that the jury must determine whether the heater was "safe for use," rather than "safe for its **intended** use." Appellants' Brief at 21. Specifically, Appellant claims that the omission of the word "intended" relieved the jury from determining "whether the heater was intended to be used for the purpose to which it was put." *Id.* Appellant further alleges that they presented at trial "substantial and uncontroverted testimony establish[ing] that use in a baptistry font was

not an intended use of this heater." *Id.* at 22.

¶ 7 In the instant case, the challenged instruction in relevant part reads as follows: "If you find that the heater at the time it left the defendant's control lacked any element to make it safe for use or contained any condition that made it unsafe for use, then the heater was defective and the defendant is responsible for any harm caused by that defect." N.T., 5/14/99, at 1224–1225.

¶ 8 The purpose of a jury charge is to clarify the legal principles at issue. *General Equip. Mfrs v. Westfield Ins. Co.*, 430 Pa.Super. 526, 635 A.2d 173, 184 (1993), *appeal denied*, 537 Pa. 663, 644 A.2d 1200 (1994). Thus, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations. *Von der Heide v. Commonwealth DOT*, 553 Pa. 120, 718 A.2d 286, 289 (1998). It is well established that a trial judge is bound to charge the jury only on the law applicable to the factual parameters of a particular case and that it may not instruct the jury on inapplicable legal issues. *Schaefer v. Stewartstown Dev. Co.*, 436 Pa.Super. 354, 647 A.2d 945, 947 (1994). "Thus, 'instructions given to a jury must be confined to the issues raised in the pleadings and the facts developed by the evidence in support of such issues.'" *Id., quoting, Heymann v. Electric Service Mfg. Co.*, 412 Pa. 338, 194 A.2d 429, 432 (1963).

¶ 9 As most recently stated by this court in *Phillips v. Cricket Lighters*, 2001 PA Super 109, ¶ 22, 773 A.2d 802: "There are three elements in [a] products liability action: 1) the product must be defective; 2) the defect must be a substantial factor in causing plaintiff's injuries; and 3) the defect must exist at the time the product left defendant's control." In certain cases, it is appropriate for the jury to be specifi-

cally instructed that the product must be made safe for its "intended use." *Marshall v. Philadelphia Tramrail Co.*, 426 Pa.Super. 156, 626 A.2d 620, 626, *appeal denied*, 538 Pa. 635, 647 A.2d 511 (1993), *citing, Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020 (1978). On the other hand, inclusion of the word "intended" is not always necessary for a proper instruction. For example, where there is no evidence that the product was used in an improper or unintended manner, the trial court need not instruct the jury on "intended use." *Id.; see also, Craley v. Jet Equip. & Tools, Inc.*, 2001 PA Super 171, ¶¶ 15–16; *Sheehan v. Cincinnati Shaper Co.*, 382 Pa.Super. 579, 555 A.2d 1352, 1356, *appeal denied*, 523 Pa. 633, 564 A.2d 1261 (1989).

 ¶ 10 The record reflects that the intended use of the product was to heat liquids. Appellant's Director of Sales Engineering testified that the intended use of the product was to heat water or a water based solution. N.T., 5/13/99, at 823. Indeed, the product could be used to heat water in a baptistry. *Id.* Appellant generally does not know how purchasers will use the product after it is sold; however, "they could use it for almost anything that they wanted." *Id.* at 826–827.

¶ 11 Appellant's only other witness, a fire expert, opined that the fire did not begin in the baptistry. *Id.* at 888. Appellant's counsel stated in closing argument that the issue was not whether the product was intended for use in a baptistry:

> Now, I told you in the beginning this case is not whether this is a baptistry heater or not. It's not. But the reality is that somebody put this into a system,

added all this heavy duty wiring and these components and made it work just fine in this baptistry for more than twenty years. **And it still would be working if it hadn't been for that fire.**

N.T., 5/14/99, at 1187 (emphasis added). Appellant's counsel argued that the fire did not start in the baptistry, recounted the testimony offered by the fire expert and pointed to the evidence which bolstered the expert's opinion.

¶ 12 Thus, the testimony of Appellant's own witnesses and counsel's closing argument did not suggest an unintended use. Rather, Appellant sought to establish that: (1) the heater worked properly on the day of the fire; (2) the heater was not the cause of the fire; and (3) the fire started elsewhere in the church. Finally, as noted above, the intended use of the product was as a water heater. It is undisputed that the Church used the product as a water heater. Because the evidence did not support an instruction on intended use, the trial court did not err by failing to provide such an instruct on. *See, Marshall* and *Craley*. Appellant's first claim fails.

¶ 13 Appellant next asserts that the trial court erred in failing to provide any sanction for the spoliation of evidence.[4] Unlike most cases involving spoliation, the product itself was not destroyed or missing. Rather, Appellant contends that the Church and/or its insurer intentionally and wrongfully destroyed the **fire scene** before providing Appellant with a full and fair opportunity to examine the scene. Appellant claims that it was severely prejudiced because its primary defense was that the

---

4. Appellant raised this issue two times before trial. On October 5, 1998, Appellant filed a motion for summary judgment seeking to dismiss the case with prejudice as a spoliation sanction. The trial court denied this motion on November 16, 1998. On April 22, 1999, Appellant filed a motion in limine proposing a different sanction for the Church's spoliation: identifying the Church's insurance company as the real party in interest. The trial court denied this motion on May 6, 1999.

fire started elsewhere in the church and not within the baptistry.

¶ 14 Specifically, Appellant argues as follows. Shortly after the November 26, 1994 fire, the Church knew that the heater was a "prime suspect" as the cause of the fire. The Church and its insurer developed this theory through expert reports and photographs, specifically targeting the heater as the source of the fire. After the Church settled with its insurer in November 1995, the Church and/or its insurer destroyed the fire scene and did not photograph or preserve evidence tending to establish other sources of the fire. Moreover, the insurer knew long before the scene was destroyed that it had a potential subrogation claim against Appellant. Indeed, the insurer brought the instant products liability action against Appellant, with the Church as the named plaintiff. The insurer first notified Appellant of its claim on September 30, 1996, after the fire scene had been demolished. For these reasons, Appellant claims the trial court erred in failing to impose a spoliation sanction, such as dismissing the Church's case.

■■ ¶ 15 When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion. *Croydon Plastics Co. v. Lower Bucks Cooling & Heating,* 698 A.2d 625, 629 (Pa.Super.1997) ("the decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court"), *appeal denied,* 553 Pa. 689, 717 A.2d 1028 (1998). "An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Pilon v. Bally Eng'g Structures,* 435 Pa.Super. 227, 645 A.2d 282, 285, *appeal denied,* 539 Pa. 680, 652 A.2d 1325 (1994).

¶ 16 In *Schroeder v. DOT,* 551 Pa. 243, 710 A.2d 23 (1998), our Supreme Court adopted the spoliation-of-evidence standards set forth by the Third Circuit Court of Appeals in *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76 (3rd Cir.Pa.1994). According to *Schmid,* the spoliation doctrine is broadly applicable to cases where "relevant evidence" has been lost or destroyed:

Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Jamie S. Gorelick, Steven Marzen and Lawrence Solum, Destruction of Evidence, § 2.1 (1989). Such evidence permitted an inference, the "spoliation inference", that the destroyed evidence would have been unfavorable to the position of the offending party. As Judge Breyer put it in *Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 218 (1st Cir.1982), "the evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document." As Judge Breyer also noted, the spoliation inference is also seen as having "prophylactic and punitive effects." *Id.* The admissibility of spoliation evidence and the propriety of the spoliation inference is well established in most jurisdictions, including Pennsylvania. *See e.g., Nation-Wide Check Corp.,* 692 F.2d 214 (1st Cir.1982); *Mensch v. Bic Corp.,* 1992 WL 236965 (E.D.Pa. 1992) (citing Pennsylvania cases); Gorelick, *et al., supra,* § 2.24 . . . .

We believe the key considerations in determining whether such a sanction is appropriate should be: (1) the degree of

fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *See e.g., Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263 (8th Cir.1993); *SDI Operating Partnership, L.P. v. Neuwirth,* 973 F.2d 652 (8th Cir.1992); Gorelick, *et al, supra,* § 3.16, p. 117 ("To fulfill the purposes of discovery sanctions ...—that is, to restore the accuracy of the trial, compensate innocent victims, and punish guilty spoliators—courts select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.")

*Schmid,* 13 F.3d at 78–79 (citations omitted).

■ ¶ 17 Thus, the reasoning of *Schmid* applies not only to cases where the product is lost or destroyed, but also to cases where alternative potential causes of the accident are lost or destroyed. *See, Pia v. Perrotti,* 718 A.2d 321 (Pa.Super.1998), *appeal denied,* 558 Pa. 621, 737 A.2d 743 (1999).[5] Such evidence is certainly "relevant" to a products liability defense, even if the case may center primarily on the narrower question of whether or not the product itself was defective. *Baliotis v.*

*McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa. 1994).

¶ 18 In the instant case, the trial court conducted a spoliation analysis. First, the court determined that there was "no negligence or bad faith on the part of the plaintiff." Trial Court Opinion, 6/28/2000, at 8. Next, the court found that Appellant suffered relatively little prejudice for several reasons: (1) the actual product was not destroyed or missing; (2) "there are voluminous documents and photographs of the actual fire scene, thus reducing the need for an on scene inspection"; and (3) the Philadelphia Fire Department conducted its own investigation and determined the cause of the fire. *Id.* Finally, the court concluded that the drastic sanction of dismissal sought by Appellant was unwarranted under these circumstances. *Id.*

■ ¶ 19 Under the specific circumstances of this case, we see no abuse of discretion. We begin with an analysis of fault. Fault has two components: responsibility, and the presence or absence of bad faith. *Pia,* 718 A.2d at 324; *Baliotis,* 870 F.Supp. at 1290; *Henkel Corp. v. Polyglass USA, Inc.,* 194 F.R.D. 454, 456–457 (E.D.N.Y.2000).

■ ¶ 20 As to the first component, we note that a plaintiff has a general duty to preserve relevant evidence where: (1) the plaintiff knows that litigation against the defendants is pending or likely; and

5. In *Pia,* 718 A.2d at 323, a produce warehouse caught fire. Various experts inspected the scene and ultimately concluded that the fire may have been related to inadequate tightening of wires inside a metering cabinet. *Id.* The plaintiffs preserved this evidence, but tenants of the building then removed all of the remaining electrical equipment, including machinery and wires near the source of the fire in the southwest corner of the building. *Id.* The defendant, who was charged with negligence for failure to tighten the wires in the metering cabinet, sought and received a

jury instruction on spoliation. *Id.* at 324. Specifically, the trial court instructed the jury that "if these [destroyed] materials had been retained and had been able to have been inspected by the defendants, that evidence from those materials would have been unfavorable to the party that made them unavailable." *Id.* The jury found in favor of the defendant. This Court conducted a full spoliation analysis and ultimately found no abuse of discretion in the trial court's issuance of a spoliation instruction. *Id.* at 325.

(2) it is foreseeable that discarding the evidence would be prejudicial to the defendants. *Baliotis*, 870 F.Supp. at 1290, *citing, Hirsch v. General Motors Corp.*, 266 N.J.Super. 222, 628 A.2d 1108, 1114 (Law Div.1993). *Cf. Schmid*, 13 F.3d at 81 (the plaintiff does not have a responsibility to identify all potential defendants and invite them to attend an "exploratory investigation"). These principles hold true regardless of whether the plaintiff is an insured or an insurer pursuing a subrogation action. *Id.* The plaintiff's power to control the scene and to exercise authority over the preservation or destruction of evidence is a relevant factor in determining responsibility. *Pia*, 718 A.2d at 324; *Howell v. Maytag*, 168 F.R.D. 502, 506 (M.D.Pa. 1996).

¶ 21 Of course, "the scope of the duty to preserve evidence is not boundless." *Baliotis*, 870 F.Supp. at 1290. At a minimum, if the plaintiff knows that a particular party is potentially responsible, in the absence of exigent circumstances the plaintiff should provide this party with the opportunity to inspect the evidence. *Id.* at 1291.[6] Similarly, if the plaintiff's investigation reveals that a particular product may be the cause of the fire, the plaintiffs should preserve the product itself. If the investigation reveals alternative potential sources of the fire, these alternative sources should be preserved because they present clearly relevant defense evidence. *Pia*, 718 A.2d at 325.

¶ 22 If, on the other hand, the investigations of the plaintiff and independent experts reveal no alternative sources of the fire, the plaintiff may be considered less at fault for failing to preserve the entire fire scene, because there is no clearly relevant defense evidence to preserve (aside from the allegedly-defective product

itself). *See, id.* at 324 (party considered less at fault for failing to preserve scene where "she simply preserved what she had been informed was important"). This is not to say that a spoliating party is necessarily blameless in such a situation. For example, where the victim of a fire has identified a potentially responsible party, particularly in the early stages of the investigation, it may be just and reasonable to notify such a party so that the party can conduct a full and complete investigation, untainted by spoliation. *Howell*, 168 F.R.D. at 506–507. In other words, a fire scene may contain evidence of alternative sources of the fire that were overlooked by the plaintiff's investigators or third parties. *Henkel*, 194 F.R.D. at 456. In the final analysis, however, we conclude that a party's responsibility for preserving the entire fire scene is relatively low where there appears to be only one source of the fire. This is particularly true given the inherent instability and danger posed by unremediated fire scenes. *Baliotis*, 870 F.Supp. at 1292.

¶ 23 In the instant case, the Church and its insurer certainly could have afforded Appellant the opportunity to inspect the fire scene, and are not blameless for their failure to do so. *Howell*, 168 F.R.D. at 506–507. On the other hand, for the reasons set forth above, we conclude that their responsibility for failing to preserve the entire fire scene is relatively low. *See, Baliotis*, 870 F.Supp. at 1290 (insurer bore some responsibility for destroying fire scene, even though all identified sources of the fire were preserved, because the fire scene contained evidence relevant to the issue of causation).

¶ 24 A second component of fault is the presence or absence of good faith. *Pia*, 718 A.2d at 324; *Baliotis*, 870 F.Supp. at 1291 (bad faith is not a necessary prerequi-

---

6. As in *Pia*, we decline to announce a blanket rule that "a plaintiff must in every case preserve the entire fire scene." *Pia*, 718 A.2d at 325.

site to sanctions for spoliation). In the instant case, the trial court found that the Church did not act in bad faith. After reviewing the record in light of our deferential standard of review, we see no abuse of discretion in this conclusion.[7]

¶ 25 Next, we turn to the issue of prejudice. It is commonly accepted that a defendant suffers some measure of prejudice if it is precluded from conducting its own independent investigation of a fire scene to determine alternate causes. *Pia,* 718 A.2d at 325; *Baliotis,* 870 F.Supp. at 1291; *Henkel,* 194 F.R.D. at 457. *See also, Schmid,* 13 F.3d at 80 (generally, in a design defect case, "the defendant will want as much information as possible relevant to the issue of causation").

¶ 26 On the other hand, prejudice to the defendant is less severe where potential alternative causes of the accident are speculative. *Schmid,* 13 F.3d at 80; *Henkel,* 194 F.R.D. at 457. Prejudice is less severe where an independent third party expert (such as a fire marshal) has investigated the scene, because in such a situation the defendant need not rely solely on the plaintiff's own investigation to determine the presence or absence of alternative causes. *Howell,* 168 F.R.D. at 507 n. 3. Prejudice is also less severe in a design defect case, because the defendant can test

and examine multiple products of the same design. *Schroeder,* 710 A.2d at 27–28; *Schmid,* 13 F.3d at 80. Finally, our courts have recognized that a defendant in a fire scene case is rarely precluded from presenting a defense to the plaintiff's claim. This is true because the defendant can cross-examine the plaintiff's experts and call its own experts to render opinions based on the plaintiff's evidence. *Pia,* 718 A.2d at 325; *Baliotis,* 870 F.Supp. at 1291. In this respect, the defendant is protected by the fact that the plaintiff has the burden of proving both a defect and causation. *Schroeder,* 710 A.2d at 27.

¶ 27 In the instant case, the factors recited above indicate that Appellant suffered a relatively low degree of prejudice. The record reveals that Appellant presented a vigorous defense to the Church's theory of causation, and presented a renowned fire expert to render an opinion based on the Church's evidence. The investigations of the Church and the fire marshal did not reveal an alternative source of the fire; thus, the failure to preserve the entire scene resulted in only a speculative degree of prejudice. Finally, because this was a design defect case, Appellant had a reasonable opportunity to examine other products under similar circumstances.[8] For all of these reasons, we

---

7. Of course, courts do have the discretion to determine that a party acts in bad faith where that party deliberately orders a fire scene to be destroyed without allowing a known potential tortfeasor to examine the scene. *See, Henkel,* 194 F.R.D. at 457. In the instant case, however, the trial court did not choose to find bad faith.

8. Appellant contends that the instant case was not a classic design defect case, where experts on both sides could study the product and debate whether it had an inherent defect. Appellant's Brief at 31–32. Rather, Appellant contends that "plaintiff's entire proof came from the fire scene which Plaintiff destroyed without giving Defendant the opportunity to examine it." *Id.* at 32. In other words, Ap-

pellant argues that the case centered primarily on whether the fire started in the baptistry, rather than whether the product was defective. While we understand Appellant's position, the fact remains that the Church had the burden of proving that the product had a design defect. The jury found that the product was defective, and Appellant raises no argument on appeal directly challenging this determination. Thus, we see merit to the Church's argument that "[t]he product in question was preserved and Emerson had ample opportunity to inspect and test it or any other comparable products. However, apparently recognizing that it could not defend the design of its product, Emerson chose to take the position that its product did not cause the fire and that the fire did not even start in the

see no abuse of discretion in the trial court's conclusion that Appellant suffered relatively little prejudice.

¶ 28 In light of the trial court's determinations of fault and prejudice, we also see no abuse of discretion in its decision to refrain from issuing sanctions that would have the effect of dismissing the Church's case. Generally, courts should select the least onerous sanction commensurate with the spoliator's fault and the other party's prejudice. *Schmid*, 13 F.3d at 79. Where fault and prejudice are not severe, dismissal is inappropriate. *Schroeder*, 710 A.2d at 27–28; *Pia*, 718 A.2d at 325; *Schmid*, 13 F.3d at 81.[9] Thus, we conclude that the trial court did not abuse its discretion in failing to impose this sanction.

¶ 29 Appellant argues that the trial court erred by failing to impose any sanction, including lesser sanctions such as a spoliation instruction to the jury.[10] The record reveals that Appellant did request a spoliation instruction, but the court did not provide one. We note that in cases similar to this one, a spoliation instruction is often granted because it is considered the least onerous penalty commensurate with the plaintiff's degree of fault and the defendant's prejudice. *Pia*, 718 A.2d at 325; *Baliotis*, 870 F.Supp. at 1293; *Henkel*, 194 F.R.D. at 457; *Howell*, 168 F.R.D. at 508. While the trial court certainly would have been within the bounds of its discretion to grant such a sanction, we cannot conclude that its failure to do so was so erroneous as to constitute an abuse of discretion. *See*, *Pilon*, 645 A.2d at 285 ("an abuse of

discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will"). Moreover, even if the court should have granted a spoliation instruction, Appellant has demonstrated no prejudice in the court's failure to so instruct. Appellant's second claim fails.

¶ 30 Appellant's final claim is that the trial court committed reversible error when it permitted the Church to offer testimony concerning other fires involving immersion heaters. Specifically, the Church called (as on cross examination) Donald M. Cunningham, a former engineer and current consultant to Emerson. N.T., 5/12/99, at 518. Before he testified, the Church's counsel indicated that he would ask Mr. Cunningham questions about other fires involving immersion heaters. *Id.* at 513–514. Appellant objected that this testimony would constitute a surprise because Appellant first learned of this proposed line of questioning on the previous afternoon. *Id.* at 512, 515. Appellant also indicated that the court should first conduct an evidentiary hearing to determine whether the incidents and products were similar. *Id.* at 513. The trial court replied, "let's begin the trial testimony and we will see what develops." *Id.* at 516.

¶ 31 The Church's counsel questioned Mr. Cunningham at length in an attempt to establish that immersion heaters manufactured by Emerson were involved in other church fires. N.T., 5/12/99, at 534–554.

---

baptistery. This is a 'fire scene case' only to the *extent that Emerson made a strategic decision to make it one*, in an unsuccessful attempt to divert attention away from its defective product." Church's Brief at 32.

9. We note that in *Henkel*, a fire scene case where the trial court ruled that the plaintiff was highly culpable and the prejudice to the

defendant was severe, the court still declined to dismiss the case because such a sanction was considered too punitive. *Henkel*, 194 F.R.D. at 457.

10. A spoliation instruction permits the jury to infer that "the destroyed evidence would have been unfavorable to the position of the offending party." *Schmid*, 13 F.3d at 78.

Mr. Cunningham consistently testified that the heaters at issue in those cases were "different," or that they were component parts of a manufactured system built by another company. *Id.* at 543.[11] The witness was also questioned about other lawsuits brought against Appellant involving fires in which another company used one of Appellant's heaters in the manufacturing of a system. The witness responded that Appellant was dismissed from the case in two of these incidents and that in the third case, the jury ruled in favor of Appellant. *Id.* at 616–617. After Mr. Cunningham was excused, Appellant moved to strike "all of the testimony concerning other fires and other products," but the court denied this motion. *Id.* at 619–620.

¶ 32 Before closing argument, Appellant asked the court to preclude the Church's counsel from referring to the other church fires. N.T., 5/13/99, at 1155. The trial court agreed. *Id.* The Church's counsel did refer to other church fires, but the court overruled Appellant's objection to this reference. *Id.* at 1204. The court did, however, grant Appellant a supplemental jury charge regarding the evidence of other fires. *Id.* at 1145–1146. The court instructed the jury:

> Members of the jury, you may recall that I permitted Mr. Yost to cross-examine Mr. Cunningham regarding other fires involving the heater in question. Now, from time to time we do permit this type of evidence. And we permit the attorneys to offer this subject by laying a proper foundation. Now, when I talk about laying a proper foundation what I'm saying is that evidence is only admissible if it's relevant. By relevant we mean important. And evidence should not be admitted if it may preju-

dice the other side, in this case the defendants.

> Evidence of other fires was admissible only if Mr. Yost could establish that the evidence concerns incidents sufficiently similar to the fire involving the church and occurred under sufficiently similar circumstances.

> If Mr. Yost has failed to satisfy the burden on this issue, then I instruct you to disregard the evidence in its entirety. You may not consider these factors and the similar products involved in those fires in reaching your decision. There simply is no evidence that those fires which do not involve this type of heater had any bearing on plaintiff's claims in this case.

N.T., 5/14/99, at 1209–1210.

¶ 33 Appellant argues that the trial court erred by allowing the jury to hear the line of questioning involving other fires and other heaters because the court did not first hold an *in camera* hearing to determine whether the other incidents were sufficiently similar to the instant case. "While evidence of other occurrences involving an allegedly defective product may be admissible in the plaintiff's case in chief to show (1) the existence of a defective condition, (2) causation, or (3) notice of the defect, such evidence is admissible only if the plaintiff first establishes a substantial similarity of conditions between the prior incident and the incident giving rise to the plaintiff's cause of action." *Spino v. John S. Tilley Ladder Co.,* 448 Pa.Super. 327, 671 A.2d 726, 735 (1996) (emphasis added), *affirmed,* 548 Pa. 286, 696 A.2d 1169 (1997). "The admission of such evidence is tempered by judicial concern that the evidence may raise collateral issues which confuse both the real issue

---

11. In the presence of the jury, the court commented to the Church's counsel that "I want proof .. that was are talking about the same heater, and I haven't heard it yet." *Id.* at 544.

and the jury. To constitute reversible error, a ruling on evidence must be shown to be erroneous and harmful to the complaining party." *Harkins v. Calumet Realty Co.*, 418 Pa.Super. 405, 614 A.2d 699, 705 (1992).

¶ 34 We recognize the possibility that an open-ended, argumentative exploration of possible similar incidents will confuse the jury and prejudice the defendant with the taint of unproven prior incidents. *See, Spino*, 671 A.2d at 735. Rather than conduct this line of questioning in the presence of the jury, an *in camera* hearing is advisable. *See, id.* This process allows the trial court to determine which particular incidents (if any) are relevant to the instant case, and to limit the plaintiff's line of questioning to those incidents that have already been deemed relevant by the court. *Id.* In short, we disapprove of the trial court's decision to allow the Church's counsel to "shoot first and ask questions later."

¶ 35 Nevertheless, the testimonial **evidence** offered by Mr. Cunningham did not prove to be prejudicial to Appellant. Mr. Cunningham distinguished the facts and the use of the heaters in other cases and did not testify or suggest that Appellant's product caused other fires. To the extent the posing of the questions themselves prejudiced Appellant, the trial court corrected that error in its instruction to the jury. The jury was advised to ignore this line of questioning and was specifically told not to consider the relationship of other similar products and other fires in its deliberations. Generally, in the absence of extraordinary circumstances, a prompt and effective curative instruction which is "directed to the damage done" will suffice to cure any prejudice suffered by the complaining party. *See, Siegal v. Stefanyszyn*, 718 A.2d 1274, 1277 (Pa.Super.1998), *appeal denied*, 559 Pa. 693, 739 A.2d 1059 (1999).[12] Such is the case here. Moreover, juries are presumed to heed a court's curative instructions. *Commonwealth v. Simpson*, 562 Pa. 255, 754 A.2d 1264, 1272 (2000), *cert. denied*, — U.S. —, 121 S.Ct. 2556, 150 L.Ed.2d 722, 2001 U.S. Lexis 4757. Under these circumstances, a new trial is not warranted.

¶ 36 Judgment affirmed.

¶ 37 DEL SOLE, President Judge, files a concurring opinion.

DEL SOLE, President Judge, concurring.

¶ 1 I agree with the Majority's ruling affirming the judgment entered in favor of the Church. However I believe the Majority's spoliation analysis is unnecessary.

¶ 2 The doctrine of spoliation applies to cases in which the product is damaged or missing. *Roselli v. General Electric Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991). In this case the product was preserved. The Church brought this action against Appellants based upon the alleged failure of its product, and the Church preserved that product for purposes of litigation. The Church had the obligation to meet its bur-

12. Appellant argues that the curative instruction *itself was inadequate. This issue is* waived because Appellant did not raise a prompt objection to the curative instruction. *See, Burnhauser v. Bumberger*, 745 A.2d 1256, 1259 (Pa.Super.2000); *Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491, 508 (1995) (when an objection is sustained and a cautionary instruction is given, and the defendant fails to object to the cautionary instruction or to request any further instruction, counsel is presumed to be satisfied with the cautionary instruction and any prejudice is cured, because we further presume that the jury follows the court's instructions), *cert. denied*, 519 U.S. 826, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996).

den of proof to establish all the elements of a strict liability case by a preponderance of the evidence, including causation. Appellants were free to argue that the product was not defective or that there existed alternative causes for the fire. However, the Church can not be held responsible for maintaining the entire fire scene. The Church, like other fire victims, wished to rebuild. It was entirely reasonable for the Church to take such action. To require fire victims to delay reconstruction until all possible causes are identified, persons are notified and "reasonable time" for inspections expire, places an unnecessary and unreasonable burden on these victims. Such delay would require that the victims secure their premises, postpone reconstruction and endure further disruption in their lives. In my judgment, this is not necessary where the party making the claim has preserved the product it alleges caused the damage.

¶ 3 Contrary to the Majority's position I do not find instructive this court's decision in *Pia v. Perrotti*, 718 A.2d 321 (Pa.Super.1998). There a fire destroyed the appellant's warehouse. The investigators could not determine the origin of the fire, although it was known that it resulted from an electrical malfunction in the southwest corner of the building. Appellant preserved only a metering cabinet, which it claimed housed wires which the appellees had inadequately tightened. The trial court gave a spoliation instruction due to the appellant's failure to preserve the other electrical connections and electrical items located in close proximity to the metering cabinet.

¶ 4 In this case, the investigation led to the baptistry heater. The heater and all items related to the heater were preserved and available for Appellants' inspection. Appellants' claim, regarding a lack of access to the entire fire scene, differs significantly from the facts of *Pia*.

¶ 5 Because the facts of this case did not warrant a spoliation analysis, I concur in the Majority's decision which finds no error on the part of the trial court.