J-S27017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JIHAD LEWIS | : | |
| | : | |
| Appellant | : | No. 2482 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 12, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001470-2020

BEFORE:   LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 6, 2024**

Appellant Jihad Lewis appeals *nunc pro tunc* from the judgment of sentence imposed after a jury convicted him of first-degree murder and related offenses.  Appellant argues that the verdict was against the weight of the evidence, and he challenges an evidentiary ruling.  We affirm.

The trial court summarized the relevant facts of this matter as follows:

On September 28, 2019, at 4:00 p.m., [Appellant] robbed and killed the decedent in a drug deal "gone bad."  The day before the murder, the decedent texted [Appellant's co-defendant Kalif Bronzell (Bronzell)][1] that he had drugs to sell.  On the day of the murder, at around 2:34 p.m., [Bronzell] called the decedent to arrange the drug deal; he then met up with the [Appellant] about an hour later.  Shortly thereafter, at 3:50 p.m. and 3:58 p.m., the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In its opinion, the trial court refers to Appellant's co-defendant as Kalif "Bronson" as opposed to "Bronzell."  Trial Ct. Op., 11/8/23, at 1.  However, the record reflects that Appellant's co-defendant's name is Kalif Bronzell.  **See**, **e.g.**, Aff. Prob. Cause, 10/14/19, at 4; Crim. Information, 2/21/20, at 1.

decedent called [Bronzell] before meeting up with him and [Appellant], on the 2200 block of Northwood Street in Philadelphia. [Appellant] and [Bronzell] got into the backseat of the decedent's black Ford Explorer with [Appellant] sitting behind the decedent and [Bronzell] sitting behind the front passenger. The decedent was driving, with Melquan Davis (Davis), his cousin, in the front passenger seat.

As the decedent drove around the area, [Appellant] tried to buy drugs with a counterfeit $100 bill. Around 4:00 p.m. after the decedent rejected the money, he stopped the car in the 2200 block of Croskey Street. Once he did so, [Appellant] and [Bronzell] pulled out firearms and demanded that the decedent "give it up." When the decedent refused, [Appellant] shot him once in the neck. After [Bronzell] and Davis fled from the car, the car rolled forward until it crashed into a pole in front of 2248 Croskey Street; [Appellant] ran from the car after it stopped. A Ring camera from 2237 South Croskey Street captured the sound of the gunshot, [Bronzell] and Davis fleeing the car, and the car rolling forward.

After fleeing the scene, [Appellant] and [Bronzell] met at [Appellant's] home, 2235 South 22nd Street, less than a block away from the crime scene. Eleven minutes after the murder, as confirmed by video, [Appellant] and [Bronzell], in different clothes, left the house.

In response to a 911 call, Philadelphia police arrived at the scene at approximately 4:05 p.m. and transported the decedent to Jefferson Hospital, where he was declared dead. Dr. Khalil Wardak, Assistant Medical Examiner, concluded that the decedent's cause of death was one perforating gunshot wound to the left side of the neck and that the manner of death was homicide.

On October 3, 2019, after police recovered surveillance video from several private residences, Karlina's Grocery, and a Conoco gas station, Police Officer Michael York identified [Appellant] and [Bronzell] from the surveillance footage.

Philadelphia Police Department's Crime Scene Unit examined the decedent's car and recovered a projectile lodged in the radio screen of the car, a .40 caliber Smith and Wessen fired cartridge casing (FCC) from the back passenger side seat, a pill bottle with thirty milligrams of oxycodone, a blood stained fully loaded .357 magnum revolver on the driver's seat floor, five twenty dollar bills

from the center console, an iPhone, headphones, and eight small plastic jars with marijuana.

On October 16, 2019, when police arrested [Appellant], they recovered sixteen rounds of .40 caliber Smith and Wess[o]n ammunition from the rear bedroom of his home. After being properly **Mirandized**,[2] [Appellant] admitted to being in the car but claimed he got out of the car before the shooting.

Leticia Buchanan, Firearms Examiner, concluded that the projectile recovered from the radio screen was consistent with being fired from a .40 caliber firearm. The projectile and the FCC were consistent with having been fired from the same firearm. The ammunition recovered from [Appellant's] home was the same type of ammunition used in the murder weapon.

On October 1, 2019, Davis initially gave a statement to police in which he was less than forthcoming. Subsequently, on October 19, 2019, Davis identified both men and indicated that [Appellant] was the shooter. After this identification, Davis missed several court listings for [Appellant's] preliminary hearing and was arrested under a material witness detainer order. Davis was released and failed to appear for [Bronzell's] preliminary hearing, so this [c]ourt issued a material witness detainer order for trial. On August 14, 2021, Davis was arrested and held in prison. On August 16, 2021 after a hearing before this [c]ourt, the Assistant District Attorney secured lodging for Davis in a hotel until he testified at trial the next day. At trial, Davis testified that he was scared to testify and was threatened by people on social media and in jail.

Trial Ct. Op., 11/8/23, at 2-5 (footnotes and citations omitted and formatting altered).

Following a jury trial, Appellant was convicted of first-degree murder, robbery, firearms not to be carried without a license, carrying a firearm on a public street in Philadelphia, conspiracy to commit murder, and conspiracy to

---

[2] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

commit robbery.[3]  The trial court sentenced Appellant to an aggregate term of life in prison without the possibility of parole.[4]  **See** Sentencing Order, 10/12/21, at 1-2.[5]

Appellant did not file post-sentence motions.  Appellant filed a timely direct appeal, and this Court affirmed his judgment of sentence.  **See** **Commonwealth v. Lewis**, 2276 EDA 2021, 2023 WL 2607442 (Pa. Super. filed Mar. 23, 2023) (unpublished mem.).  Appellant subsequently filed a timely *pro se* Post-Conviction Relief Act[6] (PCRA) petition.  The PCRA court appointed counsel who filed an amended PCRA petition requesting the reinstatement of Appellant's rights to file post-sentence motions *nunc pro tunc*.  The PCRA court granted Appellant's requested relief and ordered him to file his post-sentence motion on or before July 24, 2023.

_____

[3] 18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), 6106(a)(1), 6108, and 903, respectively.

[4] Specifically, the trial court sentenced Appellant to term of life without the possibility for parole for first-degree murder, and concurrent terms of ten to twenty years for conspiracy to commit murder, six to twelve years for robbery, eighteen months to three years for firearms not to be carried without a license, and five to ten years for conspiracy to commit robbery.  **See** Sentencing Order, 10/12/21, at 1-2.  The trial court imposed a sentence of guilty without further penalty for carrying a firearm on a public street in Philadelphia.  **See** **id.** at 1.

[5] Bronzell was also arrested and charged with murder and related offenses. Bronzell entered an open guilty plea to third-degree murder and conspiracy, and the trial court sentenced Bronzell to concurrent terms of six to thirty years of incarceration.  **See** Trial Ct. Op., 11/8/23, at 1, n.1.

[6] 42 Pa.C.S. §§ 9541-9546.

Appellant filed a timely post-sentence motion *nunc pro tunc* requesting a new trial based on the alleged prejudicial impact of Davis's testimony and the weight of the evidence. **See** Post-Sent. Mot., 7/24/23, at 1-6 (unpaginated). The trial court denied Appellant's post-sentence motion, and Appellant filed a timely appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Whether the trial court erred when it denied . . . Appellant's motion for a new trial where the prosecutor improperly admitted other acts evidence of an alleged prison assault perpetrated by [Appellant and Bronzell] on the sole witness prior to his testimony?

2. Whether the trial court erred when it denied . . . Appellant's motion for a new trial where the verdict was against the weight of the evidence?

Appellant's Brief at vii.[7]

---

[7] We note that the trial court found that Appellant waived the first issue on appeal due to a vague Rule 1925(b) statement. **See** Trial Ct. Op., 11/8/23, at 5-6. Because we are able to discern that Appellant was challenging the admission of Davis's testimony, we decline to find waiver based on a vague Rule 1925(b) statement. In any event, the trial court addressed the merits and provided an alternative basis concluding that Appellant is not entitled to relief on this issue. **See id.** at 5-8.

## The Davis Testimony

Appellant first argues that he is entitled to a new trial because improper testimony was admitted at his trial. **See** Appellant's Brief at 4-5.[8] Specifically, Appellant contends that the Commonwealth elicited testimony from prosecution eyewitness Davis that he was reluctant to testify because he had been threatened and assaulted while in prison. **See id.** at 4-6. Appellant argues that this testimony created an impression in the minds of the jurors that Appellant was behind the attack on Davis. **See id.** at 6-7. Appellant alleges that the testimony should have been inadmissible pursuant to Pa.R.E. 404(b)(2) and could not be remedied by a curative instruction. **See id.** 7-8.[9]

_____

[8] We note that in his brief, Appellant fails to cite to the place in the record where he objected to Davis's testimony. It is Appellant's responsibility to provide a specific citation to the place in the record where the matter referred to appears and was preserved for appeal. **See** Pa.R.A.P. 2119(c),(e). Moreover, it is not the role of this Court to act as counsel for Appellant and scour the record to support a claim of error or an abuse of discretion. **See Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007). We could conclude that Appellant's challenge is waived for this deficiency alone. **See Commonwealth v. Kane**, 10 A.3d 327, 333 (Pa. Super. 2010) (concluding that an issue was waived where the appellant failed to identify where in the record the issue was preserved in violation of Pa.R.A.P. 2119(e)). However, because we were independently able to identify an objection to the Davis testimony in the record, we decline to waiver on this basis.

[9] Although Appellant states that the admission of Davis's testimony could not be remedied by a curative instruction, Appellant did not move for a mistrial nor does he argue that a mistrial was warranted on appeal. Therefore, any claim relating to a mistrial is waived. **See Commonwealth v. Cornelius**, 180 A.3d 1256, 1262 (Pa. Super. 2018) (stating that because the appellant failed to make a timely request for a mistrial, the claim was waived on appeal); **Commonwealth v. Strunk**, 953 A.2d 577, 579-80 (Pa. Super. 2008) (providing that the failure to request a mistrial results in waiver of that claim on appeal).

The Commonwealth responds that the trial court did not abuse its discretion in admitting Davis's testimony. *See* Commonwealth's Brief at 6. The Commonwealth emphasizes that the trial court repeatedly instructed the jurors that they could not infer from the testimony of Davis that Appellant was behind the threats or assault. *See id.* at 7-8.

We review a challenge to the admissibility of evidence under the following standard:

> The trial court's decision to admit evidence is subject to review for an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Hairston*, 84 A.3d 657, 664-65 (Pa. 2014). Additionally, "[e]ven when a defendant can prove an error in the admission or exclusion of testimony, it is not enough to warrant a new trial unless he can also prove that he was prejudiced by such error." *Commonwealth v. Beltz*, 829 A.2d 680, 682-83 (Pa. Super. 2003) (citation omitted).

Here, the record reflects that before Davis testified at trial, Appellant argued a motion *in limine* seeking, among other things, to preclude the Commonwealth from eliciting testimony from Davis about why he had been reluctant to testify at Appellant's trial. *See* N.T. Trial, 8/16/21, at 11. However, the trial court concluded that Davis's reluctance to testify went to his state of mind and his credibility to the jury. *See id.* at 17-19. Appellant's counsel agreed with the trial court's statement. *See id.* at 19. During direct

examination, Davis testified that he hesitated to testify out of fear and had been attacked while in prison, and Appellant's counsel objected. *See* N.T. Trial, 8/17/21, at 102, 104. However, we note that the trial court provided cautionary instructions to the jury and that counsel failed to challenge the adequacy of these instructions. *See* N.T. Trial, 8/17/21, at 91; N.T. Trial, 8/19/21, at 90, 188.

In its Rule 1925(a) opinion, the trial court addressed the cautionary instructions as follows:

> Although Davis'[s] testimony was admissible, in an abundance of caution, this [c]ourt provided four cautionary instructions throughout the trial instructing the jurors not to infer that [Appellant] or his alleged co-defendant [Bronzell] engaged in any actions to cause . . . Davis'[s] fear of testifying. As the facts were first being given in Davis'[s] direct examination, this [c]ourt gave the instruction:
>
>> I'm letting the witness testify to his feelings because you have to determine his credibility. But just so you know, up until this point, and if something changes, you may or may not hear it. But right now, I have no evidence that [Appellant] or the alleged co-defendant have done anything wrong in that regard, but I'll hear. You have to judge his credibility, so you have to decide what perceptions, or how his perceptions, of what's going on in his world may or may not affect his credibility or his believability.
>
> N.T. [Trial,] 8/17/21, at 91.
>
> During Davis'[s] re-direct examination, the court once again instructed the jury, "I've explained to the members of the jury, and I still haven't heard . . . any evidence that [Appellant] or [Bronzell] have done anything wrong in that regard, in terms of any threats, *et cetera*." *Id.* at 154-55. This [c]ourt gave a third cautionary instruction during Officer Matthew Raudenbush's direct examination about interviewing Davis:

> Members of the jury, this isn't being offered for the truth, but I assume it is to explain - or assist you with his credibility. And remember, I told you whatever Mr. Davis thinks, and felt, and whatever incident he may have described, there is absolutely no evidence that [Appellant], and as far as the co-defendant, is in any way related or responsible for that.

N.T. [Trial,] 8/19/21, at 90.

The cautionary instruction was given for the fourth time before jury deliberations:

> [Y]ou did hear evidence that Melquan Davis expressed fear at different points in time about testifying. I told you this before, and I cannot emphasize this enough, you are not to infer that [Appellant] in this case or [Appellant's alleged co-defendant Bronzell], engaged in any actions to cause his fear because there was no such evidence.

***Id.*** at 188.

Trial Ct. Op., 11/8/23, at 7 (some formatting altered).

Importantly, after the trial court provided the cautionary instructions, Appellant's counsel did not object. We observe on this record that the trial court asked counsel if there was anything else to address, or if there was a need for a sidebar prior to jury deliberations, and Appellant's counsel replied in the negative. Further, counsel did not object to the trial court's jury instructions. ***See*** N.T. Trial, 8/19/21, at 217.

The jury is presumed to follow the trial court's instructions. ***Commonwealth v. Spotz***, 896 A.2d 1191, 1224 (Pa. 2006). Instantly, we note that Appellant's counsel objected to the Davis testimony, the trial court then provided cautionary instructions, and that counsel did not challenge the adequacy of these instructions. ***See*** N.T. Trial, 8/17/21, at 91; N.T. Trial,

8/19/21, at 90, 188. "Where an objection is made, then a curative instruction issued, [the defendant's] only challenge is to the adequacy of the curative instruction." *Commonwealth v. Page*, 965 A.2d 1212, 1222 (Pa. Super. 2009) (citation omitted); *see also Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1275 n.12 (Pa. Super. 2001) (stating that failure to object indicates the party "is satisfied with the curative instruction and that any prejudice is cured" because the jury is presumed to follow the court's instruction) (citation omitted). As stated, Appellant did not object to the trial court's cautionary instruction, and we conclude that any claim in relation to its adequacy is waived. *See Page*, 965 A.2d at 1222. Appellant is not entitled to relief on this issue.

**Weight of the Evidence**

Appellant next contends that he was entitled to a new trial based on the weight of the evidence. Appellant's Brief at 9. Specifically, Appellant alleges that Davis's testimony was inconsistent and incoherent, and that the verdict was based on conjecture, speculation, and surmise. *See id.* at 9-10.

When reviewing the denial of a motion for a new trial based on the weight of the evidence, we apply the following standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

- 10 -

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (citations omitted).

This Court has stated,

[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

\* \* \*

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Wright*, 314 A.3d 515, 524 (Pa. Super. 2024).

Here, the trial court addressed Appellant's weight claim as follows:

The [decedent's] cousin, Melquan Davis, was a credible eyewitness to the murder. Davis identified [Appellant] as one of two people who got into the decedent's car and shot him. While Davis may have been confused at times, his testimony was overall

- 11 -

consistent with the other evidence, including video, the decedent's cell phone data, and the ammunition found in [Appellant's] home. Surveillance video shows [Appellant] and [Bronzell] walking towards the decedent's car, riding in the car, fleeing from the crime scene, and [Appellant] changing his clothes, demonstrating consciousness of guilt. The decedent's cell phone data shows multiple calls between the [decedent] and [Bronzell] right before the shooting. A box of .40-caliber ammunition was recovered from [Appellant's] home that was consistent with the projectile and FCC recovered from the scene. The verdict does not shock the conscience of this Court.

Trial Ct. Op., 11/8/23, at 8-9.

After review, we discern no abuse of discretion. *See Windslowe*, 158 A.3d at 712. The jury, sitting as the finder of fact, was free to believe some, all, or none of the evidence presented and to determine the credibility of the witnesses. *See Wright*, 314 A.3d at 524. This Court will not re-weigh the evidence or assess credibility, as this Court cannot substitute its judgment for that of the finder of fact. *See id.* On this record, we conclude that there was no abuse of discretion in denying Appellant's motion for a new trial, and the verdict does not shock the conscience. *See id.*; *Windslowe*, 158 A.3d at 712.

For the reasons set forth above, we conclude that Appellant is not entitled to relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/06/2024</u>