J-A21038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
LAUREN PATRICIA DALY, :
:
Appellant : No. 2029 EDA 2015

Appeal from the Judgment of Sentence September 8, 2014
in the Court of Common Pleas of Delaware County,
Criminal Division, No(s): CP-23-CR-0003801-2013

BEFORE: BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED NOVEMBER 03, 2016**

Lauren Patricia Daly ("Daly") appeals from the judgment of sentence entered following her conviction of two counts each of aggravated assault and recklessly endangering another person, and one count each of criminal attempt (homicide), endangering the welfare of children, possession of an instrument of crime ("PIC") and criminal contempt.[1] We affirm.

In its Opinion, the trial court provided a comprehensive summary of the history underlying the instant appeal, which we adopt as though fully restated herein. *See* Trial Court Opinion, 10/9/15, at 1-10.

Briefly, Daly, a pediatrician in Wilmington, Delaware, became romantically involved with the victim, Margaret Grover ("Grover"), in 1999. They resided together and had two children through artificial insemination.

---

[1] *See* 18 Pa.C.S.A. §§ 2702, 2705, 901, 4304, 907, 4132.

Grover gave birth to E., whom Daly subsequently adopted. Daly gave birth to M., whom Grover subsequently adopted.

The relationship devolved into violence, leading to the couple's separation in 2011. Pursuant to a custody Order, each parent would have time with the other's natural child. Ultimately, on May 27, 2013, Grover drove with M. and E. to Daly's house, to return M. from a visit. During the drop off, Daly emerged from her residence and stood in front of Grover's car pointing a gun. Daly then shot Grover three times, with bullets striking Grover's face, chest and abdomen. E., who was sitting in the front passenger seat, was unharmed. After firing three shots, the gun jammed.

A jury convicted Daly of the above-described charges, after which the trial court sentenced Daly to an aggregate prison term of 271-624 months. Daly filed a post-sentence Motion, which the trial court subsequently denied. Thereafter, Daly filed the instant timely appeal.

In this appeal, Daly presents the following claims for our review:

I. Whether the trial court erred in its pretrial finding that [Daly] was guilty of criminal contempt, and further erred in advising the jury that [Daly] was guilty of criminal contempt and charged the jury that they could consider [Daly's] acts which led to the contempt finding as consciousness of her guilt of the crimes for which she was charged?

II. Whether the trial court erred in permitting the spoliation of key physical evidence, specifically[,] the automobile driven by [Grover]?

III. Whether the trial court erred in denying [Daly's] request to cross[-]examine witnesses and introduce evidence of [E.'s] misconduct to rebut the prosecution[']s argument that [Daly's] ill

will toward her son was a motive to her actions and in support of her claim of legitimate concern for [E.'s] anti-social and potentially violent behaviors?

IV. Whether the trial court erred in accepting the Commonwealth's argument that an exchange of letters between the respective domestic relations counsel for [Daly] and her spouse constituted a court order, or enforceable agreement[?]

V. Whether the trial court erred in imposing consecutive sentences for offenses that arose out of a single transaction, thereby imposing a manifestly excessive sentence—which constituted a *de facto* life sentence—for a first[-]time offender involved in a non-fatal criminal encounter?

Brief of Appellant at 6-7 (some capitalization omitted).

Daly first argues that the trial court improperly (a) found that Daly was guilty of criminal contempt based upon her failure to comply with the trial court's Order to provide a writing sample, (b) informed the jury that Daly was guilty of criminal contempt, and (c) charged the jury that it could consider the acts underlying Daly's criminal contempt as consciousness of her guilt as to the crimes charged. *Id.* at 15, 18. Daly acknowledges that at her formal arraignment, her attorney from the preliminary hearing was present, but notified the court that Daly was consulting with other counsel. *Id.* at 15. Daly states that immediately following the July 2, 2013 arraignment, while she was not represented by counsel, the Commonwealth filed a Motion to Compel her to give a handwriting exemplar. *Id.* at 16. According to Daly, the trial court told Daly that it would either appoint counsel or have the public defender's office represent her. *Id.* Nevertheless, Daly asserts, the trial court granted the Commonwealth's

Motion to Compel, ordered her to provide a handwriting exemplar by July 9, 2013, and threatened that if she failed to do so, the jury would be informed of her non-compliance. *Id.* Daly contends that notwithstanding her lack of counsel, she was improperly brought back to court, found guilty of criminal contempt, and sentenced to pay $5,000/day fine for each day that she failed to give an exemplar. *Id.* at 17. Daly points out that upon retaining private counsel, she did provide the exemplar.[2] *Id.* at 18. Daly also claims that the trial court erred by incorporating her contempt fine into her judgment of sentence. *Id.*

The Pennsylvania Supreme Court has long upheld a court's power to maintain courtroom authority "by the imposition of summary punishment for contempt in appropriate cases." *Commonwealth v. Moody*, 125 A.3d 1, 8 (Pa. 2015). Use of the court's summary contempt power is reviewed under an abuse of discretion standard: "[I]n considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs." *Commonwealth v. Williams*, 753 A.2d 856, 861 (Pa. Super. 2000) (citations omitted).

To establish a claim of indirect criminal contempt, the Commonwealth must prove the following four elements:

---

[2] Attorney Michael J. Malloy, Esquire ("Attorney Malloy"), formally entered his appearance on July 22, 2013.

(1) the order [in question] must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) the contemnor must have had notice of the specific order or decree; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.

***Commonwealth v. Ashton***, 824 A.2d 1198, 1203 (Pa. Super. 2003) (citation omitted).

Initially, we address Daly's argument that the trial court gave her until July 9, 2013, to provide the handwriting exemplar. ***See*** Brief of Appellant at 17. Our review of the record discloses that during the morning of July 2, 2013, the trial court initially ordered Daly to provide a handwriting exemplar by July 9, 2013. N.T., 7/2/13, at 32-33. Later that same day, when informed of Daly's continued refusal to provide an exemplar, the trial court judge told Daly that "I'm going to find you in contempt of [c]ourt if you refuse today to give the handwriting sample. And I'm going to fine you $5,000 a day for every day that you withhold the sample." ***Id.*** at 39. Thus, Daly's assertion that the court gave her until July 9, 2013 to provide an exemplar is in error.

In its Opinion, the trial court addressed Daly's remaining contentions as to the criminal contempt conviction, and concluded that they lack merit. Trial Court Opinion, 10/9/15, at 10-16. We agree with the reasoning of the trial court, as set forth in its Opinion, and affirm on this basis. ***See id.***

Daly next claims that the trial court improperly permitted the "spoliation of key physical evidence, specifically, the automobile driven by

the victims." Brief of Appellant at 26. Daly argues that "prior to [her] having had an opportunity to obtain her own forensic expert[s], the trial court—acting upon a request by the Commonwealth—allowed the vehicle to be released back to [] Grover, who in turn had the vehicle completely repaired." *Id.* Daly contends that no effort was made to preserve the windshield or other damaged parts for examination or testing by her or her experts. *Id.* at 26-27. Daly acknowledges that the doctrine of spoliation is most often used during civil litigation, but argues for its application in this criminal case.[3] *Id.* at 27. According to Daly, the failure to preserve the evidence allowed the Commonwealth to present "a virtually unchallengeable theory to the jury." *Id.* at 28. In particular, Daly points out the Commonwealth's theory that she had leaned on the hood of the vehicle while shooting, leaving a "void" on the hood of the vehicle. *Id.* Daly asserts that this negated her claim that she was a few feet in front of the vehicle when she fired the weapon. *Id.* Further, Daly argues, the repairs on the vehicle allowed the Commonwealth to challenge her expert's testimony on the grounds that his tests were performed after the repair of the vehicle. *Id.* at 29.

---

[3] The spoliation doctrine is broadly applicable to cases where "relevant evidence" has been lost or destroyed. *Mount Olivet Tabernacle v. Edwin L. Wiegand Div., Emerson Elec. Co.*, 781 A.2d 1263, 1269 (Pa. Super. 2001). Evidence that a party lost or destroyed permits an inference, the "spoliation inference," that the destroyed evidence would have been unfavorable to the offending party. *Id.*

Initially, we observe that Daly's claim regarding the applicability of the spoliation doctrine was not raised in her Pa.R.A.P. 1925(b) Concise Statement. Rather, Daly presented the following claim of error:

That the trial court erred in ruling that [Daly] had two (2) weeks from the date of the arraignment to obtain and retain an appropriate expert for the inspection of the victim's vehicle before said vehicle would be released, repaired and be unavailable for [Daly's] review. The court's ruling was further evidence of its immediate bias and prejudice towards [Daly] to such an extent and not to be able to be fair and impartial in further proceedings.

Concise Statement at ¶ 7. Thus, Daly challenged the length of the time period during which she could examine the vehicle, and claimed that the trial court was biased. **See id.** To the extent that Daly now argues the applicability of the doctrine of spoliation of evidence in this criminal case, the claim is waived.[4] **See Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (stating that "[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be waived."); **accord Commonwealth v. Hairston**, 84 A.3d 657, 672 (Pa. 2014).

To the extent that Daly challenges the length of the time period within which she could retain an expert to examine the vehicle, upon our review of the record, we affirm the trial court's conclusion that the claim lacks merit,

---

[4] In the criminal context, a sanction to discourage spoliation already exists. Crimes Code Section 4910 provides criminal sanctions for a party who tampers with or fabricates physical evidence. 18 Pa.C.S.A. § 4910.

for the reasons stated in the trial court's Opinion. *See* Trial Court Opinion, 10/9/15, at 33-34.

In her third claim of error, Daly argues that the trial court improperly denied her request "to cross[-]examine witnesses and introduce evidence of [E.'s] misconduct in support of her claim of legitimate concern for [E.'s] anti-social and potentially violent behaviors[.]" Brief of Appellant at 31. Daly asserts that she sought to introduce an online "blog," authored by E., and recordings of telephone calls received from E.'s school. *Id.* at 32. Daly contends that this evidence would have rebutted the Commonwealth's evidence that she hated her son. *Id.* According to Daly, the trial court ruled that the online blog was inadmissible without having ever read the blog, and did not allow it or evidence regarding E.'s behavior into evidence. *Id.* at 36. Daly claims that the evidence was relevant and would demonstrate to the jury that she was justified in her concern about E.'s behavior and that her insistence on talking to officials at E.'s school was "well founded." *Id.* at 42-43, 46.

The following standard governs our review of the admissibility of evidence:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1253 (Pa. Super. 2011) (quoting *Commonwealth v. Levanduski*, 907 A.2d 3, 13-14 (Pa. Super. 2006) (*en banc*) (internal citations omitted)).

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. *See* Trial Court Opinion, 10/9/15, at 28-30. After carefully reviewing the record, we agree with and affirm on the basis of the trial court's Opinion with regard to this claim. *See id.*

In her fourth claim, Daly argues that the trial court improperly accepted "the Commonwealth's argument that an exchange of letters between the respective domestic relations counsel for [Daly] and [Grover] constituted a Court Order, or enforceable agreement." Brief of Appellant at 55. Daly contends that the exchange of letters was, at best, an exchange of competing proposals, in preparation of the domestic relations court entering such an order. *Id.* at 59. According to Daly, the letters do not constitute a parenting plan under the Domestic Relations Act, *see id.* at 58 (citing 23 Pa.C.S.A. § 5331(b)(1), (5)), or a court order. Brief of Appellant at 58. Therefore, Daly argues, "it was completely erroneous, and extremely

prejudicial for the Commonwealth and the trial court to represent to the jury that [Daly] had violated a [c]ourt [o]rder or agreement[,] when she presented herself outside of her residence to receive her child." *Id.* at 59.

Upon our review of the parties' briefs and the certified record, we conclude that the trial court addressed this claim and correctly determined that it lacks merit. *See* Trial Court Opinion, 10/9/15, at 20-24. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis with regard to Daly's fourth claim. *See id.*

In her fifth claim, Daly asserts that the trial court improperly imposed consecutive sentences "for offenses that arose out of a single transaction, thereby imposing a manifestly excessive sentence—which constituted a *de facto* life sentence—for a first[-]time offender involved in a non-fatal criminal encounter." Brief of Appellant at 61. Daly's claim implicates the discretionary aspects of her sentence.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). In order to invoke this Court's jurisdiction to address such a challenge, the appellant must satisfy the following four-part test: the appellant must (1) file a timely notice of appeal pursuant to Pa.R.A.P. 902, 903; (2) preserve the issues at sentencing or in a timely post-sentence motion pursuant to Pa.R.Crim.P. 720; (3) ensure that the

appellant's brief does not have a fatal defect as set forth in Pa.R.A.P. 2119(f); and (4) set forth a substantial question that the sentence appealed from is not appropriate under 42 Pa.C.S.A. § 9781(b). *McAfee*, 849 A.2d at 274.

Here, Daly timely filed a Notice of Appeal, and raised her claim in a timely-filed post-sentence Motion. Daly also has included in her brief a Statement of reasons relied upon for allowance of appeal, in accordance with Pa.R.A.P. 2119(f). Accordingly, we will review Daly's Rule 2119(f) Statement to determine whether she has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted).

Here, Daly's appellate brief contains the requisite Rule 2119(f) Statement. In that Statement, Daly presents the following reason upon which she relies for allowance of appeal:

> The law is well settled that the decision to run sentences consecutively is not a basis upon which to grant discretionary review of a sentence. However, when such a decision results in a clearly excessive sentence, such sentence is reviewable.

Brief of Appellant at 14.

This Court has recognized that

[a] defendant *may* raise a substantial question where he receives consecutive sentences within the guideline ranges[,] if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Diehl*, 140 A.3d at 45 (quoting *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013)). The extreme sentence in this case, in essence a life sentence, raises a substantial question.

"An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). "Where the sentencing court imposes a sentence within the guideline range, we must review to determine whether the trial court's sentence is 'clearly unreasonable.'" *Commonwealth v. Dodge*, 957 A.2d 1198, 1200 (Pa. Super. 2008) (citing 42 Pa.C.S.A. § 9781(c)(2)).

At sentencing, the trial court stated its reasons for imposing consecutive sentences. *See* N.T., 9/9/14, at 115-18 (wherein the trial court based its sentence upon its belief, *inter alia*, that Daly (1) was an extremely dangerous person capable of doing "what she set out to do[,]" which was to kill [Grover]; (2) still did not understand the legal and moral implications of

what she had done; and (3) Daly showed no remorse for her actions). In its Opinion, the trial court additionally explained that had the gun not jammed, "this would have been a murder case, not a trial for attempted homicide." Trial Court Opinion, 7/9/15, at 37. Further, the trial court stated that it "credits [the Grover's] fears for her life should Daly be released. Given Daly's refusal to admit her homicidal intent, even to herself, a total sentence of many years behind bars is well suited to her personal characteristics and potential for rehabilitation." *Id.*

Upon our review of the record, we cannot conclude that the trial court's sentence was the result of "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *See Walls*, 926 A.2d at 961. Accordingly, we cannot grant Daly relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/3/2016

- 13 -