J-A14020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHERYL SHASTEEN, INDIVIDUALLY AND AS EXECUTRIX, AND PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES WILLIAM SCHWARTZ; CAROLYN LIBERTY, INDIVIDUALLY AND AS EXECUTRIX AND PERSONAL REPRESENTATIVE OF THE ESTATE OF MARY LOU SCHWARTZ | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| ABC PHONES OF NORTH CAROLINA, INC., D/B/A A WIRELESS KRYSTAL LYNN BADILLO, INDIVIDUALLY, RODNEY BREEDLOVE, INDIVIDUALLY, DANIELLE JAMES, INDIVIDUALLY: NYNEX LONG DISTANCE COMPANY D/B/A VERIZON ENTERPRISE SOLUTIONS; VERIZON COMMUNICATIONS, INC.; CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS | : : : : : : : : : : : | |
| Appellees | : | No. 685 WDA 2020 |

Appeal from the Order Dated June 10, 2020
In the Court of Common Pleas of Beaver County
Civil Division at No(s):  10679-2016

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:                          **FILED: OCTOBER 8, 2021**

Appellants, Cheryl Shasteen, individually and as executrix and personal

representative of the estate of James William Schwartz, and Carolyn Liberty,

individually and as executrix and personal representative of the Estate of Mary

Lou Schwartz, appeal from the order entered in the Beaver County Court of

Common Pleas, which denied Appellants' petition to modify or vacate the arbitration award entered in favor of Nynex Long Distance Company d/b/a/ Verizon Enterprise Solutions, Verizon Communications, Inc., and Cellco Partnership d/b/a Verizon Wireless.[1]  We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> [Appellants'] operative fifth amended complaint asserts that James Schwartz sustained a heart attack on February 20, 2016 while at home.  His wife, Mary Lou Schwartz, attempted to use her cellular phone to call a relative, who was in training with a local volunteer fire department, apparently for assistance.  She was not able to make the telephone call during this alleged emergency because her cell phone had been disconnected because the account had been compromised.[2]
>
> The complaint goes on to allege that she was deprived of contact through a telephone for 40 minutes and this delay allegedly caused the death of James Schwartz and gave rise to injuries/claims of other plaintiffs.  [Appellants] have asserted numerous claims/counts against the various defendants.
>
> The case proceeded through protracted litigation between the time of the filing of the original complaint in May of 2016 through December of 2017.  On December 20, 2017, [the

_____

[1] The remaining entities listed in the caption were not parties to the arbitration proceeding that is the subject of this appeal.  Additionally, none of the remaining parties filed an appellate brief in this case.

[2] Specifically, an individual committed theft on February 19, 2016, using Mrs. Schwartz's identity and Verizon account information to purchase cellular phones from a third-party retailer, ABC Phones of North Carolina, Inc.  (**See** Appellants' Fifth Amended Complaint, filed 4/12/17, at ¶¶23-31).   This incident resulted in the deactivation of Mrs. Schwartz's phone from Verizon's system at the time of Mr. Schwartz's medical emergency.  (**Id.** at ¶¶36-37).

trial court] sustained preliminary objections on the basis of an arbitration provision in the agreement between the Verizon [Appellees] and James William and Mary Lou Schwartz. There are 35 counts contained in the fifth amended complaint. A number of counts were dismissed by [the trial court's] order of December 20, 2017. The claims by the Estate of James William Schwartz were the claims that were referred to arbitration by the December 20, 2017 Order. The remaining, pending counts were stayed[3] by [the trial court's] December 20, 2017 … and … March 27, 2018 order[s].

The case proceeded to an arbitration hearing before a board of three arbitrators on June 3, 4, 5, 6 and July 10, 2019. The arbitration panel issued a final award on September 6, 2019, finding that [Appellants] did not sustain their burden of proof at the arbitration hearings. [Appellants] timely filed a petition to modify or vacate the arbitration award on October 4, 2019, and later, with leave of court, presented an amended petition to vacate or modify the award on February 27, 2020. [Appellees] presented a motion to confirm the arbitration award on December 11, 2019.

(Trial Court Opinion, filed June 11, 2020, at 2-3) (some capitalization omitted).

By order and opinion filed June 11, 2020, the court denied Appellants' amended petition to vacate or modify the arbitration award. The court also confirmed the arbitrators' award. On July 10, 2020, Appellants timely filed a notice of appeal. The notice of appeal included a voluntary concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On August 26, 2020, Appellants filed a *praecipe* for the entry of partial judgment in favor

_____

[3] By order entered July 28, 2020, the court continued the stay of the remaining claims pending this appeal.

- 3 -

of Appellees.

On November 13, 2020, Appellants filed an application for relief with this Court requesting a remand for the filing of a supplemental Rule 1925(b) statement. This Court permitted remand by order entered on December 8, 2020. On December 17, 2020, Appellants filed their supplemental Rule 1925(b) statement.

Appellants now raise ten issues for our review:

> Did Arbitrator Porrata-Doria's and [Appellees'] counsel['s] undisclosed conflicts of interest cause bias and prejudice to [Appellants]?
>
> Did Arbitrator Stuckey's undisclosed conflicts of interest cause bias and prejudice to [Appellants]?
>
> Did the arbitration panel ignore the requirements and elements of causes of action and fail to apply the law?
>
> Did the arbitrators ignore *per se* violations without explanation or authority?
>
> Did the arbitrators fail to provide concise written reasons for the award in accordance with arbitration rules of American Arbitration Association ("AAA") Arbitration Rule [43](b)…?
>
> Were [Appellants] prejudiced by the arbitrators' failure to impose any sanction for spoliation of evidence, after notice and during litigation, causing evident partiality?
>
> Were [Appellants] unfairly prejudiced by deprivation of cross-examination of [Appellees'] representatives with knowledge of relevant facts?
>
> Did the trial court err in its order by erroneously stating that questions 3 and 4 of [Appellants] "were not raised before the court in [Appellants'] petition to vacate or modify the award" when, in fact, these issues were raised by [Appellants] in referenced pleadings?

Did the trial court err in its order by erroneously stating [Appellants] "never identified the *per se* violations that the arbitrators allegedly ignored," when, in fact, the *per se* violations were specifically identified?

Did the trial court err in failing to take judicial notice of a typo, concerning [AAA] Rule 43(b) (concerning arbitrators' duty to provide concise statement), when inadvertently identified as [AAA] Consumer Rule 47(b)?

(Appellants' Brief at 9-11).

"Pennsylvania has a well-established public policy that favors arbitration…." ***MacPherson v. Magee Memorial Hosp. for Convalescence***, 128 A.3d 1209, 1219 (Pa.Super. 2015) (*en banc*), *cert. denied*, ___ U.S. ___, 138 S.Ct. 354, 198 L.Ed.2d 756 (2017) (quoting ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 661 (Pa.Super. 2013)).

Judicial review of a common law arbitration award is severely limited as otherwise arbitration would be an unnecessary stage of litigation, causing only delay and expense without settling the dispute.

The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to a reversal for a mistake of either. **Neither we nor the trial court may retry the issues addressed in arbitration or review the tribunal's disposition of the merits of the case.** Rather, we must confine our review to whether the appellant was deprived of a hearing or whether fraud, misconduct, corruption or other irregularity tainted the award. The appellant bears the burden to establish both the underlying irregularity and the resulting inequity by clear, precise, and indubitable evidence. In this context, irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself.

[T]he right to a fair hearing comprises the right to notice and the right to an opportunity to be heard.

*U.S. Spaces, Inc. v. Berkshire Hathaway Home Services, Fox & Roach*, 165 A.3d 931, 934 (Pa.Super. 2017) (internal citations and quotation marks omitted) (emphasis added).

"An argument that the arbitrators were prejudiced or partial, or that they reached an award so unjust that it constitutes constructive fraud, will not be heeded." *Gwin Engineers, Inc. v. Cricket Club Estates Development Group*, 555 A.2d 1328, 1329 (Pa.Super. 1989) (quoting *Mellon v. Travelers Ins. Co.*, 406 A.2d 759, 761 (Pa.Super. 1979)). "Similarly, an 'irregularity' will not be found simply upon a showing that an incorrect result was reached." *Id.* "[A] trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law." *U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874, 877 (Pa.Super. 2006), *appeal denied*, 593 Pa. 729, 928 A.2d 1291 (2007) (quoting *Prudential Prop. & Cas. Ins. Co. v. Stein*, 683 A.2d 683, 685 (Pa.Super. 1996)).

In their first issue, Appellants contend that Arbitrator Porrata-Doria had an undisclosed conflict of interest. Specifically, Appellants note that Appellees' counsel's law firm represented Arbitrator Porrata-Doria's employer, Temple University, while Appellants' case was active. Appellants assert that Appellees' counsel's law firm "failed to disclose at any relevant time that they continued to represent Temple University, and thereby its tenured Philadelphia professor," Arbitrator Porrata-Doria. (Appellants' Brief at 18). Appellants maintain that Arbitrator Porrata-Doria's conflict created a procedural due

- 6 -

process violation by denying them a fair arbitration hearing. Appellants conclude that they suffered prejudice due to the conflict of interest, and the trial court should have vacated the arbitration award on this basis. We disagree.

In an arbitration proceeding, a party is entitled to a "full and fair" hearing "conducted by one not involved with a party to the proceeding." *Abramovich v. Pennsylvania Liquor Control Bd.*, 490 Pa. 290, 294, 416 A.2d 474, 476 (1980). "[A] showing of a direct relationship between a party to an arbitration proceeding and a designated arbitrator must be shown, such as the existence of a prior employer-employee or attorney-client relationship, before the requisite partiality of that arbitrator is established." *Land v. State Farm Mut. Ins. Co.*, 600 A.2d 605, 607 (Pa.Super. 1991). *See also Sheehan v. Nationwide Ins. Co.*, 779 A.2d 582 (Pa.Super. 2001), *appeal denied*, 568 Pa. 619, 792 A.2d 1254 (2001) (explaining insurance policy at issue called for appointment of "competent" arbitrator to resolve disputes; mere fact that arbitrator handled matters on behalf of insurer while associate at firm over twenty-three years ago did not render arbitrator incompetent; existence of arbitrator's prior relationship with insurer did not deprive appellant of full and fair hearing or constitute fraud, misconduct, partiality or corruption).

Instantly, Appellants' amended petition to vacate or modify the arbitration award argued that: 1) Arbitrator Porrata-Doria was a full-time

employee of Temple University at the time of the arbitration; 2) the Philadelphia office of Appellees' counsel's law firm, Obermayer Rebmann Maxwell & Hippel LLP, represented Temple University during the same period;[4] and 3) the arbitrator and defense counsel violated Appellants' rights by failing to disclose this information. (**See** Amended Petition to Vacate or Modify, filed 2/27/20, at ¶12). The trial court, however, concluded that the relationship between defense counsel's firm and the arbitrator was not "direct," and Appellants did not present any evidence demonstrating that the arbitrator knew that this law firm represented his employer. (**See** Trial Court Opinion at 5).

Here, we agree with the court's determination that there is no direct relationship between the arbitrator and a party to the proceeding. **See Land, supra**. Rather, a more attenuated relationship existed through the arbitrator's employer and a different office of Appellees' counsel's law firm. Absent more, we will not heed Appellants' claim that Arbitrator Porrata-Doria was prejudiced or partial. **See Gwin Engineers, Inc., supra**. Thus, Appellants are not entitled to relief on their first claim.

In their second issue, Appellants assert that Arbitrator Stuckey had a conflict of interest. Appellants rely on the averments included in an advertisement for a legal textbook authored by Arbitrator Stuckey, which

---

[4] Appellees' counsel works at the firm's Pittsburgh office.

indicate that he served as the "CEO of Qualcomm, Inc." (Appellants' Brief at 20). Appellants insist that "Qualcomm, Inc. has a continuing fiduciary relationship with [Appellees]." (*Id.*) Additionally, Appellants note that Arbitrator Stuckey "used to work for CompuServe, a wholly owned subsidiary of [Appellees], but failed to disclose that he has a continuing fiduciary arrangement and ongoing relationship with [Appellees] through CompuServe…." (*Id.*) Appellants conclude that they suffered prejudice due to these conflicts. We disagree.

Instantly, Appellants submitted certain marketing materials for Arbitrator Stuckey's textbook, and these materials listed Arbitrator Stuckey as the "CEO and Board Chairman of Qualcomm, Inc." (*See* Amended Petition to Vacate or Modify at Exhibit E). Nevertheless, Appellees provided the court with Qualcomm's relevant filings with the Securities and Exchange Commission, which revealed that Steve Mollenkopf has been Qualcomm's CEO since 2014. (*See* Brief in Opposition to Appellants' Petition, filed 12/2/19, at Exhibit 1). Appellees also explained that the marketing materials for Arbitrator Stuckey's textbook appeared to contain a typographical error, because the arbitrator had actually served as the Board Chairman for a now-defunct software company called "QuanComm."[5] (*Id.* at 4). Regarding the

---

[5] Appellants' amended petition to vacate or modify the arbitration award included an article about QuanComm's business dealings, which referred to Arbitrator Stuckey as that company's former CEO. (*See* Amended Petition to
*(Footnote Continued Next Page)*

relationship with CompuServe, Arbitrator Stuckey's biography stated that he last worked for CompuServe in 1998. (*Id.* at Exhibit 2). Appellants' exhibits, however, indicated that Verizon did not acquire CompuServe until 2015. (*See* Amended Petition to Vacate or Modify at Exhibit H).

The court evaluated this evidence and determined that the "very remote nature" of any relationship between Arbitrator Stuckey and Appellees did not satisfy the standard for demonstrating impartiality. (Trial Court Opinion at 9). On this record, the court did not misapply the law. *See Land, supra*. Accordingly, no relief is due on Appellants' second issue.

In their third and fourth issues, Appellants complain that the arbitration panel "ignored the precedent presented by [Appellants] during the arbitration." (Appellants' Brief at 21). Appellants maintain that they "go into great detail regarding the record in [their] Post Arbitration Brief, which [they] adopt as if plead verbatim herein."[6] (*Id.* at 21-22). Appellants insist they

_____

Vacate or Modify at Exhibit G). Likewise, Arbitrator Stuckey's biography listed his tenure as Board Chairman for QuanComm. (*See* Brief in Opposition to Appellants' Petition at Exhibit 2).

[6] Issues are waived when they are not addressed in conformance with our rules of appellate procedure. *See Moses Taylor Hosp. v. White*, 799 A.2d 802, 804 (Pa.Super. 2002), *appeal denied*, 570 Pa. 687, 808 A.2d 572 (2002). "When an appellant attempts to incorporate by reference issues addressed elsewhere and fails to argue them in his brief, the issues are waived." *Id. See also Commonwealth v. Sexton*, 222 A.3d 405, 413 n.3 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 229 A.3d 568 (2020) (reiterating that reliance on briefs and pleadings already filed in case is not recommended, and Superior Court is not obliged to root through record and determine what arguments, if any, party raised below).

proved that Appellees were negligent, and Appellees also violated the Fair Credit Reporting Act ("FCRA")[7] and Breach of Personal Information Notification Act.[8]   Appellants argue that the arbitrators' "refusal to apply the law represents an affront to justice and a perversion of any fairness or impartiality in this case." (*Id.* at 24).  Appellants conclude the trial court erred in denying their petition to vacate or modify the arbitration award where the arbitrators failed "to apply the elements of the causes of action presented."  (*Id.* at 22). In light of the applicable standard of review, we cannot address this claim.

Here, Appellants essentially ask this Court to rehash the issues addressed at arbitration and review the panel's disposition of the merits of their case.  The relevant caselaw precludes us from taking such action.  *See U.S. Spaces, Inc., supra.*  Because Appellants' third and fourth issues do not establish that fraud, misconduct, corruption or other irregularity tainted the award, no relief is due.  *Id.*

In their fifth issue, Appellants cite AAA Rule 43(b) stating, "The award shall provide the concise written reasons for the decision unless the parties all agree otherwise."  Appellants complain, however, that the arbitrators did not supply any concise written reasons to explain their decision.  Rather, the arbitrators baldly asserted that Appellants did not meet their burden.  Absent

---

[7] 15 U.S.C.A. § 1681, *et seq*.

[8] 73 P.S. § 2301, *et seq*.

- 11 -

more, Appellants conclude that the arbitrators failed to comply with the applicable AAA standards, and the trial court should have vacated the arbitration award on this basis. We disagree.

Instantly, the arbitrators provided the following statement of reasons in support of their decision:

1. [Appellants] did not meet the burden to establish vicarious liability of [Appellees] for the conduct of any third parties, including the authorized reseller, ABC Phones of North Carolina Inc. (dba "A Wireless");

2. [Appellants] did not meet the burden to establish liability on behalf of [Appellees] under any of the stated claims, including negligence (including gross negligence and *per se* negligence), negligent infliction of emotional distress, fraud (misrepresentation, concealment, and conspiracy), wrongful death, survival action, or statutory/regulatory violations (including the FCRA or Pennsylvania Personal Information Notification Act);

3. Had liability been established, [Appellants] did not present sufficient evidence of legal damages and did not establish a basis for punitive damages against [Appellees];

\* \* \*

(**See** Amended Petition to Vacate or Modify at Exhibit D).

Here, the court found that the arbitrators' statement adequately provided concise reasons for their decision. (**See** Trial Court Opinion at 10). The record supports the court's finding. We emphasize that the arbitrators' statement provided enough reasoning to enable Appellants to prepare their petition to modify or vacate the arbitration award, as well as their brief in support of the petition. These filings specifically attack the reasoning set forth

- 12 -

in the arbitrators' statement, expounding on how Appellants established the elements of the causes of action at issue. Because the arbitrators provided an adequate written statement of reasons to support their decision, we cannot say that the court abused its discretion by failing to grant relief on this claim.[9] **See U.S. Claims, Inc., supra**.

In their sixth issue, Appellants claim that Appellees intentionally destroyed evidence prior to the arbitration hearing. Appellants argue that they requested the imposition of sanctions against Appellees for spoliation, but the arbitrators disregarded the request without any explanation. Appellants posit that the arbitrators' failure to sanction Appellees for spoliation "evidences a patent unfairness in this arbitration process." (Appellants' Brief at 25-26). Appellants conclude they did not receive a fair and impartial hearing on this basis. We disagree.

"'Spoliation of evidence' is the non-preservation or significant alteration of evidence for pending or future litigation." **PTSI, Inc. v. Haley**, 71 A.3d 304, 315 (Pa.Super. 2013) (quoting **Pyeritz v. Commonwealth**, 613 Pa. 80, 88, 32 A.3d 687, 692 (2011)).

> Since the early 17th century, courts have admitted evidence
> tending to show that a party destroyed evidence relevant to

---

[9] Moreover, Appellants' brief fails to cite any relevant authority to support their claim that the arbitrators' statement is inadequate. (**See** Appellants' Brief at 24-25). On this basis alone, the denial of relief is warranted. **See In re Estate of Whitley**, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (reiterating: "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority").

- 13 -

the dispute being litigated. Such evidence permitted an inference, the spoliation inference, that the destroyed evidence would have been unfavorable to the position of the offending party. ... [T]he evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document.

*Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191, 1196 (Pa.Super. 2015) (quoting *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1269 (Pa.Super. 2001)).

"[T]he spoliation doctrine is broadly applicable to cases where relevant evidence has been lost or destroyed." *Id.* "The duty to retain evidence is established where a party 'knows that litigation is pending or likely' and 'it is foreseeable that discarding the evidence would be prejudicial' to the other party." *Marshall v. Brown's IA, LLC*, 213 A.3d 263,268 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 226 A.3d 568 (2020) (quoting *Mount Olivet Tabernacle Church, supra* at 1270-71). If spoliation occurred, in determining the appropriate sanction, the court must weigh:

(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Id.* at 316 (quoting *Parr v. Ford Motor Co.*, 109 A.3d 682, 702 (Pa.Super. 2014) (*en banc*), *cert. denied*, 577 U.S. 1008, 136 S.Ct. 557, 193 L.Ed.2d 430

(2015)).

Instantly, the record belies Appellants' claim that the arbitrators disregarded Appellants' request for spoliation sanctions without explanation. Appellants initially requested spoliation sanctions in a March 2, 2019 letter from their attorney to Arbitrator Stuckey. (*See* Amended Petition to Vacate or Modify at Exhibit N). Thereafter, Arbitrator Stuckey provided multiple responses to the parties via email. Arbitrator Stuckey stated that the arbitrators would not address spoliation issues during discovery. (*Id.*) Rather, the parties should be prepared to present arguments, evidence, and defenses related to spoliation at the arbitration hearing and in any subsequent briefs. (*Id.*)

The spoliation issue arose during the arbitration hearings when Appellees presented testimony from Mark Merten, Verizon's District Manager for Indirect Distribution. Mr. Merten explained that his job responsibilities included some oversight of third-party retailers who sold Verizon products. (*See* N.T. Arbitration Hearing, 6/5/19, at 493). During the cross-examination of Mr. Merten, Appellants' counsel asked the witness if he had reviewed the "security video" from the day when the identity thief used Mrs. Schwartz's account information at the third-party retail location. (*Id.* at 562). The questioning then shifted to the investigation into the fraudulent transactions. (*Id.* at 566). During this line of questioning, counsel requested to show the security video to the witness. (*Id.* at 568). Counsel sought to explore

- 15 -

whether the retail associate took actions to prevent identity theft, such as requesting identification from the identity thief. (*Id.*)

Appellees' counsel objected, claiming that the arbitrators had already ruled that counsel could not ask witnesses "to state their own opinions as to what's on the video, because the panel will be reviewing the video itself." (*Id.* at 569). A discussion ensued regarding the necessity of the video evidence. Appellants' counsel wanted to use the video to dispute the accuracy of certain assertions made in the third-party retailer's investigation report. (*Id.* at 571-72). After the arbitrators agreed that they would watch the video and treat it as substantive evidence, Appellants' counsel added:

> One other caveat that I'd like to bring to the attention of the panel is the fact that this video was not provided until a year after the litigation had been going. And initially, what was provided in response to a subpoena … was a different video, allegedly out of California, that supposedly has nothing to do with these events. And how that happened, I don't know. But this is a completely different video.

(*Id.* at 573).

Arbitrator Stuckey then broached the topic of spoliation, questioning whether the parties were addressing the subject "right now." (*Id.*) Arbitrator Stuckey also observed, "I mean, eventually, you got what you needed[.]" (*Id.* at 574). At that point, Appellees' counsel interjected, noting that the third-party retailer actually "maintained the video." (*Id.*) Thereafter, the parties continued to argue about what questions Appellants' counsel could ask Mr. Merten based upon the video.

Appellants' counsel then revisited the topic of discovery:

> [APPELLANTS' COUNSEL]: I understand. Also, I need to address what [Appellees' counsel] said, that A Wireless saved the video. Actually, there were six videos.
>
> ARBITRATOR STUCKEY: That's not what we're arguing right now.
>
> [APPELLANTS' COUNSEL]: I understand, but I wanted to clarify that because he made that point on the record, so—
>
> ARBITRATOR STUCKEY: He was responding to you … suggesting that Verizon produced, in a tardy manner, a video that was not—that we understand was not under their control.
>
> [APPELLANTS' COUNSEL]: Understood.
>
> ARBITRATOR STUCKEY: So I don't think that's relevant to the hearing unless it entails spoliation, which we opened the door to including spoliation issues in this hearing. I don't hear spoliation at all. So let's move forward with any additional questions appropriate for this witness.
>
> [APPELLANTS' COUNSEL]: Okay.

(***Id.*** at 575-76). Appellants' counsel continued with his cross-examination of Mr. Marten, and he did not revisit the spoliation issue.

Following the arbitration proceedings, the court reviewed all of the arbitration hearing transcripts in evaluating Appellants' spoliation claim. The court determined that the arbitrators provided Appellants with the opportunity to present evidence of spoliation, but Appellants failed to do so. (***See*** Trial Court Opinion at 6). Our review of the record supports the court's determination. We emphasize that Appellants' counsel provided a cursory

- 17 -

argument that Appellees had attempted to withhold certain video evidence. Appellees' counsel immediately countered this assertion with a claim that his clients did not actually maintain the evidence at issue. Absent some evidence that Appellees lost or destroyed relevant evidence that was under their control, the arbitrators properly declined to apply the spoliation doctrine. ***See Rodriguez, supra***. As such, we cannot say that Appellants were denied a full and fair hearing on this basis. ***See U.S. Spaces, Inc., supra***.

In their seventh issue, Appellants assert that the arbitrators deprived them of their right to cross-examine Appellees' employees who had knowledge of relevant facts. Appellants acknowledge the trial court's conclusion that Appellants did not take "any steps to attempt to secure information on where these individuals were located." (Appellants' Brief at 26) (quoting Trial Court Opinion at 7). Appellants insist, however, that they issued eight subpoenas for the witnesses at issue. Appellants claim that two of the witnesses "were in subpoena range," but Appellees allegedly threatened to terminate one of the witnesses if he testified. Appellants conclude that they suffered unfair prejudice due to their inability to cross-examine these witnesses. This issue is waived.

Here, Appellants' one-paragraph argument presenting this issue is underdeveloped and completely devoid of any citation to relevant authority. In the absence of a more thorough analysis, we will not develop this issue on Appellants' behalf. ***See In re Estate of Whitley, supra***.

In their eighth, ninth, and tenth issues, Appellants assert that the trial court incorrectly determined that they failed to preserve their third and fourth issues for appellate review. Appellants contend that the court further erred by incorrectly denying Appellants' request to correct a typographical error in one of their filings regarding the AAA rule referenced in their fifth issue on appeal. As we have already analyzed the substance of these arguments, we need not address these final, tangential claims.[10] Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2021

---

[10] To the extent Appellants' brief frames one of these issues an "application for correction of typo," we acknowledge that the AAA rule at issue on appeal is Rule 43(b) relating to the concise written reasons for the arbitrators' award. (*See* Appellants' Brief at 28-29).